# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60306

United States Court of Appeals
Fifth Circuit

**FILED**

April 17, 2019

Lyle W. Cayce
Clerk

MATTHEW P. WALLACE,

      Plaintiff - Appellant

v.

DESOTO COUNTY SCHOOL DISTRICT,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:16-CV-287

Before STEWART, Chief Judge, and SOUTHWICK and ENGELHARDT, Circuit Judges.

PER CURIAM:*

A discharged teacher appeals from the district court's grant of summary judgment to his former school district on his procedural due process claim that he was entitled to a hearing before losing his teaching position. Because we find a genuine dispute of material fact regarding whether the plaintiff had a property interest in his teaching position, we REVERSE and REMAND.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60306

## FACTUAL AND PROCEDURAL BACKGROUND

In 2016, Matthew Wallace was a teacher and head football coach at DeSoto Central High School in Southaven, Mississippi. He had been a teacher and a coach for the DeSoto County School District since 2007. Wallace was given a "Conditional Re-employment Form" on March 31, 2016, which stated that Wallace would be "recommended for re-employment with the DeSoto County School District for the 2016-2017 school year contingent upon: Renewal of your One Year Mississippi Educator's License."

In a deposition, Wallace testified to the following. He could not remember signing a contract for the 2016-2017 academic year, but he believed he did. He was scheduled to teach a multi-media course and three blocks of physical education, which corresponded to coaching duties. To teach the multi-media course, he needed an emergency English license, which required him to complete a "Praxis II exam." He took that exam on August 2, 2016. He needed only to take the test, not pass it, to obtain his emergency license. Wallace began his duties for the 2016-2017 academic year during the first few days of August, with students starting classes around August 5. At that time, Wallace was paid a full-time teacher's salary.

In early August 2016, Wallace learned of a rumor that his nude photograph had been posted by someone else to his profile on the website Ashley Madison. Wallace in his deposition said his ex-wife, Tanya Keck, would alone have had that photo. He had heard rumors she was having an affair with Daniel Turnage, and he believed Turnage had gotten the image from Keck and then sent it to several people. About a week later, the School District removed Wallace from his coaching duties. On August 15, 2016, the School District terminated Wallace from his remaining duties as a teacher for "Immoral Conduct."

2

No. 18-60306

On Wallace's termination notice, the School District stated he could request a hearing within five days of receiving the letter. He formally requested a hearing on August 19. Wallace claims that he was given a hearing date, which was delayed until it was ultimately canceled. Wallace filed a charge of discrimination with the Equal Employment Opportunity Commission. The result of the charge being filed with the Commission is unclear in this record.

In December 2016, Wallace brought this suit in the U.S. District Court for the Northern District of Mississippi. The defendants were the School District, Wallace's ex-wife Keck, and Turnage. In his operative complaint, Wallace claimed the School District was liable to him under 42 U.S.C. § 1983 for "deprivation of property and liberty without due process in violation of the Fourteenth Amendment," under Section 1983 and Title VII for sex discrimination and retaliation, and presumably under state law for wrongful termination and breach of contract. Finally, Wallace claimed that defendants Keck and Turnage were liable under Mississippi tort law for interference with employment relations and invasion of privacy.

Wallace settled with his ex-wife and with Turnage. On March 21, 2018, the district court granted summary judgment to the School District on Wallace's due process property interest claim, breach of contract claim, and equal protection claim. Most relevant to this appeal, the district court held that Wallace did not have a property interest protected by the Due Process Clause of the Fourteenth Amendment "in his job at the time he was fired," and thus had no right to a hearing on that theory. The district court did hold that Wallace had a due process liberty interest claim against the School District "in maintaining his professional reputation," and permitted that claim to proceed to trial. The district court refused to grant summary judgment on Wallace's Title VII claim against the School District. Wallace's remaining claims were

No. 18-60306

tried to a jury. After a verdict for the defendants, the district court entered judgment against Wallace.

Wallace timely appealed. To make the narrowness of the appeal clear, Wallace's brief says he "hereby abandons any claim other than his claim that he was deprived of property without due process of law."

DISCUSSION

We give *de novo* review to the grant of summary judgment, applying the same analysis as a district court. *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 155-56 (5th Cir. 2018). The moving party, the School District here, needs to show "there is no genuine dispute as to any material fact," and that it "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To determine if genuine issues of material fact are in dispute, all "inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to" the nonmovant, Wallace. *Brand Servs.*, 909 F.3d at 156 (citation omitted).

The resolution of what remains of this suit turns on whether Wallace had a property interest in his continued employment at the School District. If he did, the United States Constitution entitles him to a hearing. To be clear, the state statutes we discuss require a hearing in some circumstances, and a hearing was not given to Wallace. In this Section 1983 suit, though, we are not deciding whether a state-law procedural obligation was satisfied. Instead, we focus on any property interest Wallace had under state law, and if there was such an interest, whether Wallace was provided with minimal constitutional due process under the Fourteenth Amendment.

The United States Constitution provides the minimal procedural protections but is not the wellspring of the property rights themselves. The rights "are created and their dimensions are defined by existing rules or

4

understandings that stem from an independent source such as state law." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). A protectable property interest is one that is held by someone with a "legitimate claim of entitlement." *Id.* If a property interest so defined has been created by state law, then its deprivation must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). We now analyze whether there was a property right, and if so, what process was due.

### I. *Existence of property right*

The Supreme Court has held that a property right in continued employment exists when a state statute provides that employees have the right "to retain their positions 'during good behavior and efficient service'" with termination only for "misfeasance, malfeasance, or nonfeasance." *Id.* at 538-39 (citation omitted). We now examine the Mississippi statutes to determine whether such rights have been created.

There are two state statutes regarding the dismissal or nonrenewal of contracts for school employees that seem potentially relevant. The first applies to licensed employees who are dismissed for cause. MISS. CODE ANN. § 37-9-59 (Supp. 2018), *amended by* 2019 Miss. Laws S.B. 2625 (amended to apply this section to the state School for the Arts). The second concerns a school district's decision not to renew an employee's contract. MISS. CODE ANN. § 37-9-105 (2013). Neither party mentions the latter statute, and we do not discuss it.

The statute Wallace claims provides his right to a hearing — which is disputed by the School District — has these applicable terms:

> For incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the

superintendent of schools may dismiss or suspend any licensed employee in any school district. Before being so dismissed or suspended any licensed employee shall be notified of the charges against him and he shall be advised that he is entitled to a public hearing upon said charges. . . .

§ 37-9-59. The statute gives covered employees the right to their positions so long as they engage in the equivalent of "good behavior and efficient service," and termination is not permitted absent conduct that is similar to "misfeasance, malfeasance, or nonfeasance." *See Loudermill*, 470 U.S. at 538-39. We conclude that this statute creates a property interest in continued employment for those employees to whom it applies.

Though some school employees have a property interest in continued employment under Mississippi law, the School District argues the statute is inapplicable because it applies only to "licensed employees," and at the time of his termination the District argues that Wallace did not have a contract. The statutory phrase on which it relies is defined this way:

The term "licensed employee" shall mean any other employee of a public school district required to hold a valid license by the Commission on Teacher and Administrator Education, Certification and Licensure and Development.

MISS. CODE ANN. § 37-9-1(1) (2013). Also relevant to our review, no contract is to be entered with a public-school teacher who does not have "a proper license as required by the State Board of Education." MISS. CODE ANN. § 37-9-7 (2013).

Despite these requirements, a school board may authorize a superintendent to enter into a conditional contract for a school year subject to "the issuance of a proper license by the State Board of Education before October 15 for those individuals to be employed beginning with the first term of the scholastic year." *Id.*

One final statute provides that the superintendent is to enter a contract with each teacher who has been approved for employment by the school board,

but those awaiting the issuance of a "proper license" may have a conditional contract that becomes void if the license is not received by October 15:

> The superintendent shall enter into a contract with each . . . licensed employee . . . anticipating . . . the issuance of a proper license before October 15 . . . who is elected and approved for employment by the school board. . . . The contract entered into with any person recommended for a licensed position who is anticipating . . . the issuance of a proper license before October 15 . . . shall be a conditional contract and shall include a provision stating that the contract will be null and void if, as specified in the contract, the contingency upon which the contract is conditioned has not occurred.

MISS. CODE ANN. § 37-9-23 (2013).

With these statutes guiding us, we analyze whether Wallace was a licensed employee when terminated. He clearly had a Mississippi Educator License, which was valid for Physical Education until June 2017, well beyond his termination in August 2016. The School District argues that is not enough to be a "licensed employee." A "proper license" is required by Section 37-9-7. The District argues that because Wallace did not have a proper license, he could not legally enter into a contract for employment and was not protected under Section 37-9-59 because he was not contracted to teach.

The phrase "proper license" is not statutorily defined, but we have no difficulty discerning its meaning. A general statute provides that the "words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning." MISS. CODE. ANN. § 1-3-65 (2014). Looking at the context for the words, we see that both Sections 37-9-7 and 37-9-23 provide that a conditional contract for the school year may be entered with a teacher who has not yet obtained a proper license, with the contract to become void on October 15 if the license has not been obtained. In this case, that means Wallace was required to obtain an English endorsement

7

specifically required for the multi-media course he claims he was contracted to teach. That would be his "proper license."

The School District is certainly correct, based on the summary judgment record at least, that when Wallace began the 2016-2017 academic year, he did not hold a "proper license" for the purposes of teaching the multi-media course. That cannot be the end of the inquiry, though, because whether Wallace had the state-defined property interest does not turn on whether he had in hand the license he needed. It depends on whether at the time of his discharge he was a "licensed employee." § 37-9-1(1). The definition of such an employee is whether the person is "*required* to hold a valid license." *Id.* (emphasis added). Thus, the determinative questions are whether Wallace at the time of his discharge was an employee — did he have a contract of employment — and was he the kind of employee who needed a valid license.

In evaluating whether he was an employee during the first few weeks of August 2016, we find the School District's argument to be unconvincing that he could not be employed because he did not then have a "proper license." We have quoted pertinent language from two state statutes which recognize there may be a delay at the beginning of the school year for a teacher to finalize the acquisition of a required license. §§ 37-9-7, 37-9-23. If the School District entered a conditional contract with Wallace, he had until October 15 to acquire the license. *Id.* He was terminated well before that.

What, then, is the evidence that he was an employee, *i.e.*, that a contract had been offered and accepted? No written contract is in the record. There is, though, a "Conditional Re-Employment Form," applicable to the 2016-2017 school year and signed by Wallace and a school principal on March 31, 2016. It provides that Wallace "will be recommended for "re-employment," contingent on getting his Mississippi Educator's License renewed. Wallace states in his deposition that he could not recall for certain that he signed a

contract, but he thought he had.  Other evidence to support that a contract existed is Wallace's testimony that the School District allowed him to begin teaching in August for the 2016-2017 academic year, and that he was paid as a full-time teacher and not in some other capacity.  Further, a statute bars a school district from paying any "licensed employee" who does not have a written contract, MISS. CODE ANN. § 37-9-43 (2013), circumstantially supporting that Wallace would not have been paid without a contract.  This evidence is sufficient to survive a summary judgment motion on the fact issue of whether a contract existed between the School District and Wallace.

If the fact issue is resolved in Wallace's favor that he had a contract, we find no question that he would have been a "licensed employee."  That is because he would have been employed as a coach and a teacher.  He needed the renewal of his Mississippi Educator's License as the Conditional Re-Employment Form stated.  Further, the School District agrees he needed to obtain the English endorsement, the "proper license," to teach the multi-media course.  Therefore, if Wallace had a contract, he would have been a "licensed employee" since he would be "required to hold a valid license."  § 37-9-1(1).  Conditional contracts, but contracts of employment all the same, may be entered with such individuals contingent on their satisfying the licensing requirement by October 15 of the school year.  § 37-9-23.

We conclude there are genuine disputes of material fact preventing a grant of summary judgment to the School District on whether Wallace had a property interest in continued employment at the time of his termination.

## II.  Procedure that was due

The process he would be due under the United States Constitution is that prior to termination, he must receive "notice and opportunity for hearing appropriate to the nature of the case."  *Loudermill*, 470 U.S. at 542 (citation

omitted).  The evidence is that the notice of his termination included notice of his right to request a hearing.  Wallace requested one, but the hearing was delayed and finally canceled.  Nothing on this record would support that Wallace in some manner forfeited his constitutional right to a hearing.

We do not examine the Mississippi statutory scheme for the hearings, which are identified in Section 37-9-59.  To the extent those procedures are consistent with constitutional due process, the School District's following them would have met its federal obligations.

\* \* \*

At the time of his termination, there is some evidence in the record to support that Wallace had a legitimate claim of entitlement to continued employment, entitling him to a pretermination hearing.

We REVERSE and REMAND for further proceedings.